IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ELIA MOORE, §
§
Plaintiff, §
§ Civil Action No. 3:07-CV-0009-D
VS. §
§
DALLAS INDEPENDENT SCHOOL §
DISTRICT, §
§
Defendant. §

MEMORANDUM OPINION
AND ORDER

The court must decide whether the decision to (temporarily) terminate plaintiff's employment may fairly be said to represent the act or policy of the school board, who is the policymaker whose conduct can render the defendant school district liable under 42 U.S.C. § 1983. Concluding that it cannot, the court grants the school district's motion for summary judgment, denies plaintiff's cross-motion, and dismisses this case with prejudice.

I

Plaintiff Elia Moore ("Moore") sues defendant Dallas Independent School District ("DISD") under 42 U.S.C. § 1983, alleging that DISD terminated her employment without notice and an opportunity to be heard, in violation of her Fourteenth Amendment procedural due process rights, and that it acted arbitrarily and capriciously to deprive her of employment, in violation of her

right to substantive due process.[1] Moore has been employed by DISD for more than 30 years.[2] In April 2005 she signed a one-year educator term contract for the 2005-06 school year. In June 2005 she was notified by letter that, effective August 8, 2005, she was assigned to a classroom teacher position at Arthur Kramer Elementary School ("Kramer Elementary"). In July 2005 DISD sent Moore another letter assigning her to a classroom teacher position at E.D. Walker Middle School ("Walker Middle School"). Moore alleges that she never received this notice. On August 4, 2005 Moore saw Bruce Henry, M.D. ("Dr. Henry"), a physician, who had been treating her since May 2005 for depression. Dr. Henry placed her on work restriction due to her medical (mental) disability, and Moore obtained a disability letter from Dr. Henry.

Shortly thereafter, Moore telephoned Kramer Elementary to notify the Principal of her work restriction, but the Principal

---

[1]Moore also brought a claim alleging a deprivation of her substantive due process right to bodily integrity. The court dismissed the claim in response to DISD's motion for partial judgment on the pleadings. *Moore v. Dallas Indep. Sch. Dist.*, 557 F.Supp.2d 755, 771 (N.D. Tex. 2008) (Fitzwater, C.J.). The facts pertinent to that cause of action are set out in the court's prior opinion. *Id.* at 757-59.

[2]Although both sides have filed motions for summary judgment, because the court is granting summary judgment in favor of DISD, it will recount the evidence in a light favorable to Moore and draw all reasonable inferences in her favor. *See, e.g., Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 617 n.2 (N.D. Tex. 2007) (Fitzwater, J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

informed Moore that she was not assigned to Kramer Elementary. Moore then allegedly called DISD Human Resources to find out where she had been assigned; no one answered the telephone, and she left a message asking for a return call. According to Moore, no one called her back, and she continued telephoning Human Resources until she talked to a staff member on August 11, 2005. This person informed Moore that she had been assigned to Walker Middle School. That same day, Moore faxed to Walker Middle School a copy of the disability letter from Dr. Henry. The letter stated that Moore was under Dr. Henry's care and may not return to work. Moore received no response, and she did not provide the letter to anyone else at DISD.

On August 12, 2005 Walker Middle School Principal Daniel Menchaca ("Menchaca") completed a job abandonment form[3] based on Moore's failure to report to work on August 8. On the same day, Menchaca sent the notice of separation (termination) for job abandonment to DISD Employee Relations. The job abandonment form was forwarded to DeLorise Gay ("Gay"), a DISD Staffing Manager.

On August 15 Gay telehoned Moore to ask her why she had not reported to work. Moore informed Gay that she believed she was on medical leave. Gay responded that there was no approved request

---

[3]Each DISD campus principal is required to submit a report of employee attendance for the first five days of the school year; after the fifth day, the school is instructed to submit a job abandonment form.

for leave in Moore's file. According to Moore, after being told that she needed to complete and submit the proper Federal and Medical Leave Act application, Moore obtained a form from the school, secured the required signatures from her physician and Menchaca, and hand delivered the form to Gay on August 16, 2005.

Meanwhile, the notice of separation for job abandonment was processed on August 17. Moore never received notice of the proposed termination, and there are no DISD documents reflecting any consideration or action on Moore's termination by the DISD's Board of Trustees (the "Board"). In fact, Moore only learned of the termination when, after seeking to return to work and completing an online application for reassignment, she was informed that she was not eligible for rehire because, according to the DISD system, she had been separated from employment for job abandonment. When Moore brought this to DISD's attention, her employment was reinstated, and she began an assignment as an Academic Coordinator at Fannin Elementary School. Moore is currently employed by DISD.

Moore later filed this suit, alleging that DISD terminated her employment without notice and an opportunity to be heard, and that DISD acted arbitrarily and capriciously, in violation of her procedural and substantive due process rights. Both parties move for summary judgment. DISD contends, *inter alia*, that Moore cannot establish a procedural due process claim because she cannot show that a DISD custom or policy itself caused her alleged damages.

DISD maintains that Moore cannot establish a substantive due process claim because she cannot establish that her substantive due process rights were violated by a DISD custom or policy.

II

To recover on her Fourteenth Amendment procedural and substantive due process claims, Moore must demonstrate that she is entitled to relief under § 1983. "Section 1983 provides a private right of action against parties acting 'under color of any statute, ordinance, regulation, custom, or usage, of any State' to redress the deprivation of rights secured by the United States Constitution or federal law." *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988)). "Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating already conferred federal rights." *Id.* (citing *Albright v. Oliver*, 510 U.S. 266 (1994)). "To prevail on a section 1983 claim, the plaintiff must show that: 1) the offending conduct was committed by a person acting under color of state law; and 2) the conduct deprived the plaintiff of rights secured by the Constitution or federal law." *Id.* (citing *Parratt v. Taylor*, 451 U.S. 527 (1981)).

Because Moore is suing DISD, she must also satisfy additional requirements. "Under § 1983, a municipality or local government entity such as an independent school district may be held liable only for acts for which it is actually responsible." *Doe v. Dallas*

*Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)).

> [A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory. However, a municipality may be held liable under § 1983 when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.

*Id.* (citations and quotations omitted). Thus "[t]o avoid summary judgment, [Moore] must offer evidence that would allow a reasonable trier of fact to find that [her] injury resulted from the exercise of the [DISD's] official policy." *Dallas Police Ass'n v. City of Dallas*, 2004 WL 2331610, at *2 (N.D. Tex. Oct. 15, 2004) (Fitzwater, J.). Official policy is:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policymaking authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984).

## III

Because Moore points to no policy statement, ordinance, regulation, or custom as the cause of her alleged injury, the dispositive question is whether her termination was a decision that "may fairly be said to represent official policy." *See Doe*, 153 F.3d at 215.

### A

Although municipal liability may be imposed for a single decision, "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Jett v. Dallas Indep. Sch. Dist.*, 798 F.2d 748, 759 (5th Cir. 1986); *Chavez v. Brownsville Indep. Sch. Dist.,* 135 Fed. Appx. 664, 679 (5th Cir. 2005) ("For an isolated decision to constitute a policy for the purposes of § 1983, we require a plaintiff to show that 'the decision was made by an authorized policymaker in whom final authority rested regarding the action ordered.'"); *Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 754 (5th Cir. 1993) ("The term [policy] often refers to formal rules and understandings, but its meaning is not exhausted by fixed plans of actions to be followed under similar circumstances consistently and over time. To the contrary, it is well established that a municipality may be held liable for courses of action tailored to a specific situation and not intended to control decisions in later situations, provided

that the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers").

B

The initial issue is who terminated Moore. Moore contends that it was the DISD Board. She reasons that because only the Board had the authority to discharge her, and because she was terminated when the notice of separation was processed by DISD personnel, it follows that her termination was an act of the Board. DISD counters that the complete lack of DISD documents reflecting any Board consideration or action on Moore's termination evidences the fact that the Board never reviewed the issue, and it was the DISD administration who acted to improperly terminate Moore.

Moore's case is distinct from others in which the final policymakers clearly acted to deprive plaintiffs of their federal rights, such as by passing a resolution or by voting. *See Coggin v. Longview Indep. Sch. Dist.*, 337 F.3d 459, 461 (5th Cir. 2003) (school board adopted resolution discharging plaintiff as district employee and Fifth Circuit held that board's termination without hearing resulted in due process violation); *Owen v. City of Independence*, 445 U.S. 622, 628-29 (1980) (city counsel passed resolution ordering city manager to take "appropriate action" against police chief and released investigative reports to news media without pre-termination hearing); *Hill v. City of Pontotoc,* 993 F.2d 422, 424 (5th Cir. 1993) (board of aldermen voted to

terminate fire chief without due process). Here, there is no evidence that the DISD Board ever considered terminating Moore, let alone actually voted to discharge her. Moore nevertheless contends that, despite this lack of evidence, the Board's responsibility is clear because (1) Moore was terminated, and (2) the Board alone possessed the authority to terminate her.[4] Essentially, Moore argues that her termination speaks for itself: the processing of the notice of separation by the DISD administration necessarily proves that her termination was the result of Board action.

Moore's argument improperly assumes, however, that DISD employees can never act without the Board's authority——that the notice of separation could never have been processed without Board approval. But the Board's right to control the acts of DISD personnel regarding the processing of Moore's termination, without any evidence that the Board actually exercised such control, cannot establish the Board's responsibility. *See Collinson v. Gott*, 895 F.2d 994, 1004 (4th Cir. 1990) (holding that Board of Commissioners was not responsible for official's violation of plaintiff's rights where there was no evidence that board directly or by knowing inaction condoned official's actions); *Chavez*, 135 Fed. Appx. at

---

[4]Under Tex. Educ. Code Ann. § 21.211(a)(1) (Vernon 2006), DISD's Board may terminate a term contract or discharge a teacher at any time for good cause, as determined by the Board. The superintendent of a Texas School District may only "initiate" termination, *see id.* at § 11.201(d)(4), and the principal of a school may only "recommend to the superintendent" the termination of an employee. *Id.* at § 11.202(b)(6).

679-80 (holding that school board was not responsible for superintendent's actions where board did not approve or adopt his decision, even though board had power to control his actions).

In an analogous case, the school board was found to have taken no action to terminate the plaintiff-teacher where——despite a statute mandating the board as the final authority on the employment of teachers——the teacher had been improperly fired by the school principal, and the issue never came before the board for proper consideration. *See Weathers v. Lafeyette Parish Sch. Bd.*, 520 F.Supp.2d 827, 835 (W.D. La. 2007) (granting summary judgment for school board). Just as the principal's firing in *Weathers* did not prove the school board's responsibility, the mere processing of the notice of separation by the DISD administration——even if it is considered to complete the termination process[5]——would not alone establish that the DISD Board was responsible for Moore's termination. Because Moore has presented no evidence that the issue of her termination ever came before the Board for consideration, the court holds that no reasonable jury could find that the Board acted to terminate Moore.[6] A reasonable jury could

---

[5]DISD argues that although the administration took the "initial steps" in recommending Moore's termination for job abandonment, those initial steps are where it stopped. Because Moore's termination never went before the Board, and the Board never voted to terminate her, DISD contends the "termination" recorded in the District's system was invalid.

[6]The court does not hold that the question whether the DISD Board is a policymaker is a question of fact. It is settled that

only find that Moore was terminated by the DISD administration——specifically by DISD personnel who processed the notice of separation that Menchaca signed.[7]

C

Having determined that a reasonable jury could only find that the DISD administration (not the Board) acted to terminate Moore, the question is whether the DISD administration possesses final authority to establish DISD policy regarding termination for job abandonment. This determination is one of law for the court to decide. *Tharling v. City of Port Lavaca*, 329 F.3d 422, 427 (5th Cir. 2003) ("The existence of official policymaking authority is a question of law to be decided by the court.").

---

policymaker status is a question of law. *See Tharling v. City of Port Lavaca*, 329 F.3d 422, 427 (5th Cir. 2003) ("The existence of official policymaking authority is a question of law to be decided by the court."). Instead, the court concludes that it is a factual question whether the DISD Board played any direct role as a decisionmaker in Moore's temporary termination. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) ("Once those officials who have the power to make official policy on a particular issue have been identified [by the trial judge], it is for the jury to determine whether *their* decisions have *caused* the deprivation of rights at issue . . . ." (second emphasis added)). Because this is a fact question, DISD can——as it has here——point to the absence of evidence to support this essential element of Moore's claim, shifting to Moore the obligation to introduce evidence that would permit a reasonable jury to find in her favor.

[7]DISD contends that Moore's termination was a simple mistake that it immediately corrected once it discovered the error. Regardless whether Moore's termination resulted from the administration's mistake or intentional action, DISD cannot be held liable under § 1983 if the administration's decision cannot be fairly said to constitute official policy.

It is well settled that the Board is the final policymaking authority for the DISD with regard to employment decisions. *See Doe*, 153 F.3d at 216 ("Texas law is clear that final policymaking authority in an independent school district, such as the DISD, rests with the district's school board of trustees.")[8]; *Coggin,* 337 F.3d at 464 ("Texas law assigns to the school board . . . exclusive policy making authority with regard to employment decisions.").[9] Consequently, the only way the DISD administration can possess final authority to establish employee termination policy is if the Board has delegated such authority to the administration. *See Jett*, 798 F.2d at 759 (holding that school district could only be bound by principal or superintendent if he was delegated policymaking authority).

Although the administration possesses some decisionmaking power regarding employee terminations,[10] "there exists a meaningful distinction between policymaking and decision making." *Chavez*, 135

---

[8]Tex. Educ. Code Ann. § 11.151(b) (Vernon 2006) provides: "The trustees as a body corporate have the exclusive power and duty to govern and oversee the management of the public schools of the district." The Code also provides that "[t]he trustees may adopt such rules and by-laws necessary to carry out the powers and duties provided by Subsection (b)." *Id.* at § 11.151(d).

[9]"The board of trustees may terminate a term contract and discharge a teacher at any time for . . . good cause as determined by the board . . . ." Tex. Educ. Code Ann. § 21.211(a)(1) (Vernon 2006).

[10]Menchaca can recommend the termination of an employee to the superintendent, *see* Tex. Educ. Code Ann. § 11.202(b)(6), and the superintendent may initiate termination, *see id.* § 11.201(d)(4).

Fed. Appx. at 679; *Bolton v. City of Dallas*, 541 F.3d 545, 549 n.3 (5th Cir. 2008) ("For example, the County Sheriff may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy."). Just as the authority to make *final* individual personnel decisions does not constitute an assignment of policymaking power, *see, e.g., id.* at 550-51 (holding that final decisionmaker cannot render the city liable where plaintiff cannot show that he was vested with policymaking power ), the DISD administration's authority merely to *initiate* or to *ministerially process* individual personnel decisions likewise does not constitute an assignment of policymaking power. *See Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 602-03 (5th Cir. 2001) (finding no delegation to superintendent because she could only recommend termination to school board); *Bennett v. City of Slidell*, 728 F.2d 762, 770 (5th Cir. 1984) (en banc) (holding that decisions that were "perhaps discretionary and ministerial" did not constitute policymaking). Thus because Moore has failed to establish that the DISD administration's processing of the notice of separation signed by Menchaca constitutes official policy, DISD cannot be held liable under § 1983.

* * *

Accordingly, the court grants DISD's August 4, 2008 summary judgment motion and dismisses Moore's § 1983 claims against the DISD. It denies Moore's July 2, 2008 partial summary judgment

motion. Because this decision resolves Moore’s remaining claims, the court dismisses this case with prejudice by judgment filed today.

**SO ORDERED.**

November 24, 2008.

SIDNEY A. FITZWATER
CHIEF JUDGE